v. East St. Louis School District No. 189, No. 518-0311. Counsel ready? Yes, Your Honor. Okay, you may proceed. May it please this Court, Opposing Counsel, Mr. Hunter. My name is Brian McCarthy. I represent Daphne Brown-Wright, Plaintiff Appellant, in claims against her former employer, East St. Louis School District 189. Plaintiffs submitted two claims to the Court below at trial on February 26, 2018. One was a contract claim, and the other a claim that she was entitled under the Wage Payment Act to collect on an agreement with the school district to pay her assets. Because the defendant at trial did not challenge the plaintiff's proofs as to the existence of either a contract or an agreement, plaintiff's claim of promissory estoppel was not submitted at the trial court. Defendant maintains in brief that plaintiff submitted a claim of promissory estoppel. Plaintiff expressly stated in her summation that she could not submit on that theory, where proof of contract was unchallenged. The essence of plaintiff's argument in this court is that the trial judge, in entering judgment against plaintiff on her claims, improperly concluded that no contract or agreement existed, wherein defendant was bound to pay a severance to plaintiff when she retired after more than 30 years of service to the school district. The legal error presented here is that the trial judge applied an incorrect understanding of law to the facts, in that the trial judge erroneously interpreted a contract so as to conclude no contract existed. Plaintiff asserts that the standard of review for interpretation of a contract is de novo. Now, the defendant contends the trial court determined the nonexistence of a contract and an agreement, and that such a determination merits a more deferential against the manifest rate of the evidence standard of review. And to this end, defendant points to the judgment's finding that the policy to pay severance to retiring administrators either was not an unambiguous promise or that the district did not unambiguously offer severance for nonconsecutive years of service, those being findings in the lower court's order. Plaintiff submits that the order and judgment entered by the trial court does not directly illuminate the process by which it reached its conclusions, but that it can be deduced by this court that the core of the trial court's judgment was an interpretation of what it perceived to be an ambiguous term in the defendant's policy. At trial, to be clear, plaintiff argued that defendant's severance policy was clear and not ambiguous. Plaintiff contended that defendant's use of the phrase years of service in the policy meant all the years which one worked for the school district. Plaintiff contended at trial that the court should view the policy as a contractual offer which plaintiff accepted by continuing to work after having an awareness of the policy. Similarly, at trial, defendant did not contend its policy was unclear. Defendant did not assert any term in the policy was ambiguous. Rather, defendant follows what I refer to in brief as a nuanced tack by arguing that there was no meeting of the minds on the definition of term years of service. Defendant contends for plaintiff to prevail on a contract claim, on her contract claim, she had to prove both parties shared the same subjective belief about the terms in the policy. That's an impossible standard and thankfully not one required by the law. In the oral judgment, the trial court determined effectively that defendant's severance policy did not constitute an offer to any particular administrator who would interpret years of service to include non-continuous ones. The inescapable meaning of this judgment below is that defendant's policy does not require it to pay severance to this particular administrator who did view years of service to include non-continuous ones. There may be some reasons for defendant to limit severance pay only to administrators with continuous years of service, but the defendant did not do this and that's a specific finding in the judgment of the court below. Interpreting the meaning of a phrase or term within a policy is different than concluding that all the words used in that policy do or do not constitute a contract. Analysis by trial courts about what words in a policy amount to an offer to contract would be a determination as to the existence of a contract. And had that analysis been made by the trial court below, it would be subject to the more deferential standard of review. The trial court below might have ruled that all the words chosen and arranged in the policy by this defendant did not constitute an offer to pay any severance whatsoever. But that's not what the trial court did. Proof at trial showed that the district did pay severance to retiring administrators in accord with that policy. So with a contract, you have an offer and an acceptance. Where was your client's acceptance of this offer? Let's say we go along with your position that should be interpreted as non-continuous years of service count, severance pay. There was a policy, right, that was, I guess, put in place after your client came back the second time to work. That's correct. Where was the evidence or what is the evidence that your client accepted this offer from the school district to actually pay her severance and relied upon that offer to continue working in the school district? Well, reliance would be an element of promissory estoppel, which we're not presenting to this court because we didn't present it below. But the question being, where was her acceptance of the offer? Under Dodaro and subsequent cases, the law is clear on this point. If the terms of the offer are clear enough to be understood as an offer, and if an employee has knowledge of that, which is to say, is the employer's action such that it disseminated those words, that offer, in such a way that the employee had knowledge or had an awareness of it? It's not even knowledge, like how it works and so forth, but what the cases that have been decided have indicated, it's simply an awareness of that policy's existence and how it affects that term, that relationship between the employee and the employer. And then continues to work, that constitutes both the acceptance as well as consideration, which binds it in terms of a contract. And again, those cases are Dodaro and the subsequent cases, which now are particularly important. Did the court make a finding regarding your client's knowledge? Well, the court made, as best I can tell, and again, I've sort of described the language of the court's finding as being sort of tortuous, saying the employer, the defendant, school district, did not make an unambiguous offer, which is to say it did not make an offer. So what the ruling below is, is that the words used in the policy simply didn't amount to an offer. So if there was no offer, there was nothing for my client to accept. Didn't the trial court also make a finding that whatever the policy was, the plaintiff was not aware of? Well, I don't understand that that was what the trial court addressed. The trial court indicated that she had not read the actual wording of the policy until after she had decided to retire and was requesting severance. But what the proof at trial below was, and this was not challenged, was that the district had always had a policy to pay its retiring administrators their accrued sick days as a form of severance. And the testimony, unchallenged by my client, was that she observed other administrators receive a severance. The testimony was she saw the retiring administrators waiving a check that they got from the district, saying this is why you save your sick days. That's what the testimony was in the trial court. On that, as to whether that was sufficient awareness, the trial court below made no determination or finding. And so to say, it would have been unusual for the court to say she failed to accept that, which the court found wasn't even an offer. Well, was there also evidence that she had been paid her sick days whenever she left the first time? When she ceased being a teacher in 1998, the finding below and the evidence was that they had paid her a check. She contested at trial whether that check constituted a severance. When she left the school district's employment in 1998, she was a teacher. So whatever it was that was paid to her below would not have been under the policy to pay severance to a retiring administrator for two reasons that aren't challenged. It can't be challenged, frankly. She wasn't retiring. Retiring implies not working anymore. She was going to work elsewhere. And secondly, she was not retiring as an administrator because she was a teacher. Her testimony was she had not even asked for that. Now, it is true that the finding of the trial court was that what she received, and it was a $1,340.68 payment, the court indicated that that payment was made, even though she contested whether she received it. The court determined she did receive it, and the court determined that it was in the nature of a severance, but clearly not a severance under the policy that she was aware of throughout the time of her employment, and certainly not under the written policy because the written policy didn't exist yet at that time. As I was mentioning in my response, the Dadao case, which is the Supreme Court case that sort of is at the head of determining whether employer policies and personnel policies can create contractual obligations with employees, the Dadao and the subsequent cases set out an analysis by which a court shall determine if an employer should be held bound to offerings within its policies or policy manuals. And the first step is to scour the policy language to determine if it reasonably leads employees to believe a promise was made. And then the second step is to consider whether that promise was made manifest to employees. And the proper analysis under Dadao requires a court to examine the employer's actions, the totality of employer actions in promulgating its policy. Now, that analysis did not happen below as far as the court's judgment, as far as my review of the court's judgment is concerned. At trial, plaintiff presented the defendant's severance pay policy, and the policy, which this court will have read, uses mandatory language. It directs that sick days shall be paid, that severance shall be equal to, and that the maximum number of days paid shall be, et cetera. The amount of the severance paid under the policy is expressed mathematically. So it says 25% of the accumulated sick leave for those with 11 to 15 years of service, for instance, and 50% of accumulated sick leave for those with 16 to 19 years, and then 75% of the accumulated sick leave for those with more than 20 years. It's the type of language that the policy uses and the means by which it puts that policy together that will lead an employee to reasonably believe that what the district was doing when it enacted that policy was offering a severance to retiring administrators. And the trial court below has left us with the belief that those words taken together don't mean that. Well, of course they do. Within the judgment order entered by the trial court, there's no analysis whatsoever of the defendant's actions with regard to its policies. Left unanswered is what was it that the district was about in enacting this policy if it wasn't to give this severance benefit to its retiring administrators. Counsel, are you... So you're arguing that this policy, the language should be construed against the drafter and therefore should be non-continuous service should qualify. But then, and basically the trial court found otherwise. And so if this court was to reverse that or review de novo, find that it will include the non-continuous service, are you asking this court to remand the case to the trial court to make these further determinations you're saying that the court did not address? Well, I believe what this court should do is enter judgment in favor of plaintiff on the fact that the contract exists under the de novo analysis. Therefore, for this court to conclude, to reverse the trial court below, to conclude that a contract was offered, that there was acceptance, there is consideration. There's also sufficient proof in the record for this court to make a determination as to what benefit, what severance was due to this plaintiff. Now, the court would have to give due consideration, I think a wide amount of discretion to the trial court's determination that she was paid this $1,340.68. But I think that's a credit against what is actually due. There's no question that at the time when the plaintiff retired as an administrator in 2012, she had accrued sick days. Now, she believes and testified that she had well in excess of the maximum number allowed under the policy, which is $180. And she testified as to what her daily rate of pay was. So if this court were to determine that a contract existed, this court could enter judgment to that effect and make a determination of what is owed her on her severance pay. The court presumably would give credit for the $1,340.68 that the trial court below said was in the nature of a severance. But if the court's question was, and I think it ought to be addressed, is did the acceptance of an amount of $1,340 when she stopped teaching for this district constitute a severance, which obviates the need for the district to pay a severance to her in 2012? I say no. And the reason is there's nothing in the policy that they went to great pains to put together that says you can only be paid one severance. And as we've been discussing, there's no argument, I'm sorry, there's no justification for saying that noncontinuous service is not included. Well, there's no reason to read any additional limitations on the severance that aren't there. And so, yes, in that sense, I think the question was, do we construe this against the drafter? Yes, absolutely. I don't say that's the risk that's run because I think it's a good policy in the state of Illinois for employers to be encouraged to have policies that create a better workforce, a more dedicated workforce. I believe that's what the defendant's school district did here. And they got an employee by virtue of this policy and maybe other things, but certainly this policy went into it that worked for them for more than 30 years. And that should be encouraged. So I don't think we're holding them to an impossible standard. We're holding them to what they actually offered. I do believe in following up to your question that there would have to be a remand made because there is, under the Wage Payment Act, there is a damage award that has to be calculated and there's also attorney's fees that can be awarded. And, of course, those matters were not taken up at the trial court level. So while I think there's sufficient proof in the record from the trial as to a judgment in favor of plaintiff for her severance, I think there are other matters that do require a remand to the trial court. Does this court have any other questions? Thank you. Pardon me, Your Honor. My glasses fell way down into my jacket pocket. I'll pull them out if I can. May it please the Court. Opposing counsel. I'm Tom Hunter. I represent District 29, East St. Louis School District, and I'm claiming against them today. For oral argument here today, I want to go directly to the standards that are established by Dover Lale. The trial court repeated those and the order itself. Fortunately for us, this case reached the trial court after an appeal before, which set forth the issues that would need to be addressed upon trial of the matter, the claims or theories of relief, promissory estoppel, implied contract, the claim for additional relief under the Wage Payment Act and the standards of Dover Lale. Underneath Dover Lale, it states directly and straightforwardly that the promise must be clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be submitted to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. And third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. Straightforward, the court found that these standards were not met, these criteria were not met, including on page 12 of the order itself. Plaintiff failed to prove that she was aware of Policy 210. In the complaint itself, plaintiff alleges that she received and read Policy 210. As it came through on trial upon remand, it was obvious that she did not read it. In addition to that, she initially testified that she had talked to other employees and district administrators regarding this, and then she was confronted with her deposition testimony that found that she did not. The trial court made numerous factual findings which require the judgment that was entered, specifically regarding awareness itself. The court additionally found that she did not talk to other employees or about the policy itself, how long she needed to be employed, whether or not it needs to be non-continuous or continuous, and she could not point to anyone else that had used a non-continuous period of service in order to make themselves eligible for the policy. She does not satisfy that second requirement of awareness of the contents of the terms that is mandated by the factual findings made by the trial court. Now we can go back to the first standard, and that is a promise clear enough. I think a fundamental distinction between the district and the plaintiff on this is that the plaintiff relates this as a contract. It's a contract formation is what dota leo goes to. First and foremost, you have to have the contract formation before you can vote the contract. Under dota leo, it has to be a clear promise. What does that mean? Well, we were given instruction on that from the fifth district in the case of Dennis. In Dennis, it was an ambiguous promise. And then the court turned around and said, in essence, Judge Powell was apparently reliant upon the contractual tenet that ambiguous language is constrained against detractor of the language. However, contractual interpretation rules cannot be utilized in establishing the fair existence of a contract. Therefore, dota leo was not satisfied. That's what the law is. Because otherwise you put employers in a very difficult position. This is not addressed by the plaintiff in any of the briefs. We have established precedent saying that it has to be a clear offer. This was not a clear offer. It wasn't a clear offer. The trial court explained that. The district's position in arguing to this, it was the only reasonable interpretation, would be that it would not apply to the plaintiff. It was not a clear offer. It wasn't a clear offer to begin with, to any employee upon return, and it certainly wasn't a clear offer to an employee who had already left the system. In relation to the question of whether or not that payment was made, the trial court found explicitly that the plaintiff's denial that the payment was made for severance was not credible. She received the severance payment for six days before. That's what the trial court found. In addition to that, the trial court found that the only reasonable interpretation was the one offered by the district. This comes off the plain language of the policy itself and also within the context of employment matters as argued by the district below and also on appeal. I would point the court's attention to the fact that the language underneath policy 510 invokes upon when an employee retires or leaves the system is when payment was made. That's exactly what happened the initial time around when Ms. Batten-Brown-Wright left the district. She was paid. She comes back now and she's saying, well, this was clear and unambiguous. I was given a clear offer. That is not so. In addition to that, she wasn't even aware of it. That's what the trial court specifically found. They went directly to the elements of Dole Ale. The court went directly to the elements of Dole Ale and the elements for mutual assent and promissory estoppel and found that it was not made. In order to get payment underneath the Wage Payment Act, as explained in the brief, the plaintiff had to satisfy Dole Ale, then prove mutual assent, and alternatively promissory estoppel, which they granted underneath the facts of the case, and then proceed towards their Wage Payment Act. None of this was satisfied. Specifically, I would ask the court to look at this particularly as the controlling precedent in this district was not addressed by the appellant, and it follows up that it has to be a clear promise. And the court gave specific factual findings on the second element of awareness and said she was not aware of the contents of the policy, not just that she didn't read, but also that she wasn't aware of what it was. Your Honor, unless there's any questions, I believe I pressed the points that I needed to on oral argument. Thank you, counsel. You didn't eat your glasses after all. Certainly a little bit, Judge. Thank you. Just a few additional minutes to provide some response to what Mr. Hunter said. It is, in my estimation, it's the wrong focus for this court to place on these facts to say that plaintiff needed a particular awareness of the written policy. And I understood Mr. Hunter's argument to be that he was saying that the policy to pay severance is effective not only on retirement, but also when somebody leaves the system. I think he was referencing the written policy, which, of course, so that the court is clear, that was enacted, promulgated in 2006 to describe what happened in 1998, that the inherent impossibility of that is, as I say, that's apparent. But more to the point, and this court asked the question, did the trial court below say fine as part of its judgment that plaintiff was not aware of the policy? He read from the trial court's oral and indicated that that's exactly what the court said. But that in itself is a misunderstanding of the analysis required under the dollar. Under the dollar, it is both the words that the employer chooses for its policy and the means to disseminate that policy. So are the words such that they would lead a reasonable employee to believe an offer is made? And did they disseminate it in such a way so that employees knew that that was the policy? And the example I would give that shows the error of that argument is if there are two people working for school district 189, and they both worked 34 years, and they both were administrators, and they both were retiring, and they both had accrued these severance benefits by accruing sick days, and they both asked the district to pay them a severance in accordance with the policy, would the district, with a straight face, come before this court and say, well, we're going to pay the one that read the policy, and we're not going to pay the one that didn't? Well, that's not what the law requires. The awareness is simply to create acceptance of an offer. And there's no question that in the court, in the truth presented below, that plaintiff had an awareness that there was a policy of the employer to pay accrued sick days as a form of severance to those that retired as administrators. She always had that understanding. It had been a policy of that district before they put it in writing. It is a policy today after they put it in writing. Was that the trial court's finding, though? I thought that the trial court found, and maybe it's credibility determination, that in fact the client did not have knowledge. Her testimony was that she was aware of it. Let's put it this way. There was no testimony presented to the trial court that plaintiff was not aware that there was a policy to pay accrued sick days as a form of severance to retiring administrators. So it could have been weighing the credibility. The defense put on no testimony that said, oh, yeah, she didn't know about that. The only testimony that the court could have drawn from is my client's testimony. The only witness they brought on largely was the payroll clerk, because she didn't testify anything about what my client knew, said, interacted. They put on one other witness who he also believed that he was entitled to payment under the policy, but he certainly didn't testify and my client wasn't aware of it. So it couldn't have been credibility determination. And if it was, and if this court says in review that this was the court making that determination, then that determination was against the weight of the evidence because there wasn't. The larger meaning in this case is that the larger context for this case that I respectfully ask this court to consider is that it should not be countenance in Illinois courts that scrutiny applicable to an employer's severance policy for retiring employees be rendered in such a way as to make employees the scapegoat for the failure of employers to clearly and properly limit a benefit that it promises to pay to employees. I think that's wrong and I don't think that should be the policy of the state of Illinois. Again, if there are no further questions, thank you for your consideration. Thank you for your arguments. The court will take this matter under advisement and render a decision in due course. Thank you.